IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MARK N. WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 307-030 |
| | ) | |
| W.A. HARRELL, Laurens County Sheriff; | ) | |
| RYAN TAYLOR, Captain/Jail | ) | |
| Administrator; DONNELLA PEACOCK, | ) | |
| Sergeant/Assistant Administrator; and | ) | |
| LUCILLE VAUGHN, Chief Nurse; | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

At the time of the events forming the basis for the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at the Laurens County Jail ("the Jail") in Dublin, Georgia. Now before the Court are the parties' cross motions for summary judgment. (Doc. nos. 49, 61). Both parties also filed responses and replies to the opposition to the respective motions for summary judgment. (See doc. nos. 61, 64, 66, 67, 68, 73, 76). For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, that judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

## I. FACTS

Plaintiff was diagnosed with AIDS on September 23, 2003. (Doc. no. 61, Pl.'s Dep. 10:16-17 (hereinafter "Pl.'s Dep.")). The events comprising the allegations in Plaintiff's amended complaint occurred while Plaintiff was incarcerated at the Jail from January 10, 2007, until April 19, 2007, when he was transferred to a state prison. (Doc. no. 15; doc. no. 61, p. 3; doc. no. 67, p. 4). Plaintiff was incarcerated at the Jail because of a probation violation. (Pl.'s Dep. 8:17-20). Prior to his January 10th incarceration at the Jail, Plaintiff had been incarcerated at the Jail on ten previous occasions and had never required medication for AIDS. (Id. at 7:21 - 8:14). Plaintiff's amended complaint names the following Defendants: (1) Laurens County Sheriff, W.A. Harrell, (2) Captain Ryan Taylor, Jail Administrator, (3) Sergeant Donnella Peacock, Assistant Administrator, and (4) Chief Nurse Lucille Vaughn. (Doc. no. 15, pp. 1, 4).

Plaintiff's allegations against Defendants are that they delayed in getting him medical treatment, and that they did not have any screening procedures at the Jail to identify inmates with communicable diseases.[1] (See generally doc. no 15; Pl.'s Dep. 15:13-18:2). Plaintiff asserts while he was incarcerated at the Jail he was not screened for HIV, tuberculosis, or any other communicable diseases. (Doc. no. 50, p. 1). Plaintiff's concern arose when he was transferred to state prison and learned that one of the inmates who transferred from the Jail to prison with Plaintiff tested positive for tuberculosis upon arrival at the prison.[2] (Doc. no.

---

[1] Defendants rely almost entirely upon Plaintiff's deposition testimony as a basis for the facts. (Doc. no. 61, Statement of Material Fact).

[2] Plaintiff alleges that while at the Jail, the prisoner who tested positive for tuberculosis worked in the kitchen. (Doc. no. 61, Pl.'s Dep. 17 - 18:2).

61, Pl.'s Dep. 16:21-17:23). However, Plaintiff maintains that he never contracted tuberculosis. (Id. at 18:8-9). Similarly, there is no record, nor does Plaintiff contend, that he contracted any communicable disease.

Plaintiff's main medical complaints are that he was not properly treated for and received delayed medical treatment for his symptoms that were purportedly caused by his AIDS, such as "spots," a rash, a boil, and sharp pain in his toes.[3] (Pl.'s Dep. 27:15-18, 28:23, 54:4-18). However, Plaintiff admitted that he was treated by Defendant Vaughn either on the same day, or day after, he submitted a sick call request. For example, on February 8, 2007 Plaintiff filled out a medical request form, on which he wrote, "I need some more cream for my rash all over my body, especially my groin area, which is causing me problems with my sleeping in the night time, and I also need something for sharp pain in my toes, and I also need the boil on butt look[ed] at because it has not drained and is still big." (Pl.'s Dep. 54:4-18). On that same day he was provided hydrocortisone cream. (Pl.'s Dep. 29:21-30:14). Plaintiff filed out another medical request form on February 25, 2007, stating "This is my third request asking for something for the pain in my leg, feet and the rash in my groin area, so I'm hoping that I can please see a skin doctor for this rash . . . please get some cream, and pain medicine. (Doc. no. 15, ex. 2). On the next day he was provided with hydrocortisone cream. (Pl.'s Dep. 29:21- 30:14). Additionally, he was provided hydrocortisone cream on January 26, 200 and on April 6, 2007. (Id.). Plaintiff also admitted that on January 26, 2007, Defendant Vaughn also looked at the boil on Plaintiff, but did not

---

[3]Plaintiff stated that to the best of his knowledge, the pain in his toes was caused by a condition called neuropathy. (Pl.'s Dep. 56:11).

give him any medication for it. (Id.).

Regarding the treatment that he received for the symptoms of his ailments, Plaintiff stated that even though he was given hydrocortisone cream, it did not improve his rash, as hydrocortisone is not something that is used for HIV. (Id. at 30:17). Plaintiff noted that he still deals with the "spots" every day despite his medication. (Id. at 31:20). He also testified that he experienced the pain in his toes prior to his January 10th incarceration at the Jail, and continued to experience the pain through the date of the deposition. (Id. at 56:12-19). Similarly, he still experiences boils on a regular basis. (Id. at 57:10 - 18). Moreover, the method for treating these boils is generally pain medication; however, Plaintiff cannot take pain medications because they affect his kidneys. (Id. at 58:22 - 59:9).

Plaintiff also claims that Defendants delayed in having him treated or seen by a doctor. Plaintiff stated that on March 14, 200[7] he wrote to the Laurens County Health Department ("LCHD") complaining that officials at the Laurens County Sheriff Department Jail would not take him to see an AIDS specialist. (Doc. no. 15, Ex. 9). Plaintiff noted that after he wrote this letter to LCHD, someone from the LCHD contacted Defendant Vaughn, and only then did Defendant Vaughn make an appointment for Plaintiff to be seen by Dr. Kanter, an infectious disease specialist, on March 19, 2007. (Id. at 2). On March 19th Plaintiff was seen by Doctor Kanter, who prescribed Bactrim, Truvada, and Kalera. (Pl.'s Dep. 30:23-25). However, according to Plaintiff and the record, he had never, at any time prior to March 19th, taken any medication for AIDS. (Pl.'s Dep. 11:11-16). Plaintiff asserts that he has "no problem with Doctor Kanter," as he helped save Plaintiff's life. (Pl.'s Dep. 65:11-12).

Plaintiff does, however, apparently contest the letter from Robbie H. Bowman ("Bowman Letter") attached as an exhibit to Defendants' motion for summary judgment. (Doc. no. 61, Ex. 1). Ms. Bowman is the HIV/STD Coordinator of the South Central Health District of the LCHD. (Id.). Ms. Bowman's letter provides in part:

> On March 14th[,] 2007, we received a letter from a local Laurens['] County Jail detainee, Marc Woods, stating that he did not have his medications for his HIV/AIDS. After contacting Lucille Vaughn, nurse at the jail, an appointment was made for March 19th, 2007, with Dr. Harold Kanter, which was the next day that this Infectious Disease doctor would be here at the LCHD to see HIV patients. Dr. Kanter is not generally the physician who see[]s inmates, but I was told by Lucille Vaughn, nurse, that Dr. Don Nelson, our local Infectious Disease doctor, had fired this particular patient and office staff refused to make an appointment for this patient, as is customary by Dr. Nelson when patients are noncompliant with treatment, medications, appointments, etc. After receiving permission from Mr. Woods to obtain medical information from Grady Health Systems for his recent hospitalization on December 13th, 2006, [it was] discovered that he did indeed have AIDS, and had left the hospital Against Medical Advice (AMA) with a peripheral intravenous access device in place, on December 14, 2006.

(Id.).

Plaintiff maintains that the allegation that he left the hospital against medical advice is not true because, he claims he was still at the hospital, and had simply stepped out of his room to go smoke a cigarette when someone came looking for him.[4] (Pl.'s Dep. 40:20 - 42:5). He claims that he then returned to the room, but was then discharged because "they felt that there was no need for me to continue to be there anymore." (Id.). He also maintains that he always complied with Dr. Nelson's orders regarding his health and instructions on what he needed to do for his AIDS, and that he does not know why Dr. Nelson would refuse

---

[4]Plaintiff was in the hospital being treated for pneumonia. (Doc. no. 61, Pl.'s Dep. 40:15-19).

5

to treat him. (Id. at 33: 8 - 35:5). Plaintiff notes that he has not had any contact with Dr. Nelson since 2004. (Id. at 34:21-23).

Plaintiff admits that he has never had any conversations directly with Defendant Harrell about his AIDS or about his condition. (Id. at 47:20- 48:1). Plaintiff maintains that his contact with Defendant Harrell consisted of a grievance. (Id. at 48:4 - 25). At Plaintiff's deposition, defense counsel asked, "Other than filing a grievance, do you have any reason to believe that Sheriff Harrell had any personal knowledge of your condition?" (Id. at 48:20-22). Plaintiff responded, "No. I have no knowledge that he had personal knowledge. The only way is by me filing a grievance against Laurens County." (Id. at 48:23-25). Concerning Defendant Taylor, Plaintiff asserts that he is not a doctor and he would not necessarily know what treatment Plaintiff needed; however, Defendant Taylor, according to Plaintiff, "is the one that could make sure that I could get the treatment that I needed." (Id. at 67:6-12). Plaintiff also agreed that Defendant Peacock is not a nurse, an EMT, or a doctor. (Id. at 68:19-22). Finally, it appears that Plaintiff's allegations concerning Defendant Peacock are based on a failure to respond to his grievances and letters. (Doc. no. 15, p. 8).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v.

---

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must

_____

outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## B.      Merits of Plaintiff's Claims

Plaintiff argues that Defendants were deliberately indifferent to his serious medical needs because, while he was incarcerated at the Jail, he was denied medical treatment. (Doc. no. 15, pp. 5-10). Specifically, Plaintiff asserts that Defendants Sheriff Harrell, Taylor, Peacock, and Vaughn were aware that Plaintiff had AIDS and was being denied medical treatment. (Id.). Plaintiff alleges that Defendant Vaughn continuously denied Plaintiff medical treatment for his "spots," rash, boil, and pain in his toes and legs, and refused to refer him to an AIDS specialist. (Id.). Plaintiff asserts that he requested treatment for these ailments by filing inmate medical request forms and grievances. (Id.). Moreover, Plaintiff provides that he also conveyed to Defendant Vaughn that he believed the pain he was experiencing was a symptom of the AIDS virus. (Id. at 5). Finally, Plaintiff also alleges that the Jail did not have proper screening procedures to identify and separate, from the general population, inmates who had tuberculosis or other communicable diseases. Plaintiff concedes that while incarcerated at the Jail, he was treated by Defendant Vaughn either on the same day, or the day after, he submitted a sick call request. Plaintiff, however, contends that Defendants delayed in making him an appointment with a doctor.

Defendants, on the other hand, state that Plaintiff's claim that the Jail did not utilize

8

appropriate screening procedures regarding inmates with communicable diseases must fail because Plaintiff admitted that he did not contract any communicable disease while incarcerated at the Jail. Defendants also assert that Plaintiff's claim that Defendants delayed in providing him medical treatment must fail because: (1) Plaintiff did receive medical treatment each and every time that he requested it (he merely disagrees with the treatment he received); (2) even if Defendants did delay in providing Plaintiff with medical treatment, there is no evidence that any such alleged delay exacerbated any medical condition of Plaintiff's; and (3) Plaintiff admitted that none of the Defendants had any subjective reason to believe that Plaintiff needed any additional medical treatment. (Doc. no. 61, p. 2).

Bearing the standard for a motion for summary judgment in mind, Defendants' motion for summary judgment should be granted. To survive Defendants' motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by the Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted). Although Plaintiff's AIDS constitutes a serious medical need, Plaintiff has not shown that Defendants acted with deliberate indifference to his serious medical needs.

To show that Defendants were deliberately indifferent to his needs, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff

9

seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

## 1.     Lack of Subjective Awareness

Under this standard, Plaintiff's claims against Defendants fail as a matter of law. As an initial matter, although Plaintiff had been incarcerated at the Jail 10 previous times, he had never required medication for AIDS. (Doc. no. 61, Pl.'s Dep. 11:11-16). Plaintiff asserts that while at the Jail he was exhibiting symptoms of AIDS such as "spots," a rash over his body, a boil, and pain in his toes. Plaintiff claims that the only medication he was provided was hydrocortisone cream, but the cream did not get rid of his rash, as "[hydrocortisone] is not something that is used for HIV." (Doc. no. 61, Pl.'s Dep. 30:17). Apparently, Plaintiff concludes that an AIDS specialist would have better addressed the symptoms he was having.

It is important to note that until March 19, 2007, Plaintiff had never been prescribed AIDS medication. (Id. at 11:11-16). Additionally, nowhere in the record has Plaintiff alleged that he expressed to any Defendants that his medical status had changed since his previous incarceration at the Jail. Also of note, in reviewing his medical request forms, it

10

appears that his main concern was his skin condition - which was being treated by Defendant Vaughn - and his desire to see a "skin doctor." (See doc. no. 15, Exs. 1, 2, 3). Thus, Defendants were not aware that Plaintiff was in need of additional medical treatment, especially taking in to consideration that on the 10 previous times that Plaintiff was incarcerated at the Jail, he did not require AIDS medication. In addition, Plaintiff concedes he did not have any evidence that Defendant Harrell had any knowledge of Plaintiff's medical needs. (Id. at 48:2-25). Plaintiff also notes that neither Defendants Taylor nor Peacock had the requisite training or expertise to realize that the treatment he was receiving was allegedly deficient. (Id. at 67:14 - 68:22). In fact, it appears that Plaintiff allegations concerning Defendant Peacock are based on a failure to respond to his grievances and letters.[6] (Doc. no. 15, p. 8). Thus, Defendants were not subjectively aware of a serious risk to Plaintiff's health or that he required any additional medical care than what he was receiving.

## 2.     Proper Treatment

To the extent that Plaintiff avers that Defendants' treatment of his medical complaints was deficient, he has provided the Court with no evidence in support of this conclusory allegation. Rather, the record demonstrates that Defendant Vaughn simply exercised professional medical judgment--at no time did she ignore Plaintiff's medical need. Indeed,

---

[6] It is well settled that alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table).

the record reflects that Plaintiff was given hydrocortisone cream on the day of or day after, he submitted his inmate medical request forms. (Doc. no. 61, Pl.'s Dep. 29:21 - 30:14). In addition, when Defendant Vaughn was contacted by the LCHD, Plaintiff was scheduled to see an infectious disease specialist on the first day the specialist had available at the LCHD. (Id.).

To the extent that Plaintiff argues that Defendant acted with deliberate indifference by simply treating the symptoms of which he complained related to is AIDS, by only prescribing hydrocortisone cream, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted). Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

12

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Given these facts, nothing in the record supports the conclusion that any Defendant subjectively knew about a risk of serious harm to Plaintiff, disregarded that risk, or provided inadequate medical treatment, let alone that any Defendant followed a course of action that was "more than gross negligence."

Indeed, the record establishes that, while Plaintiff was incarcerated at the Jail his symptoms and medial conditions were properly treated. Plaintiff was incarcerated at the Jail from January 10, 2007 until April 19, 2007. (Doc. no. 61, p. 3; doc. no. 67, p. 4). Plaintiff had been incarcerated at the Jail 10 previous times, and had never required medication for AIDS. (Doc. no. 61, Pl.'s Dep. 11:11-16). The record reflects that on February 8, 2007, Plaintiff submitted an inmate medical request form stating:

> I need some more cream for my rash all over my body especial[ly] my groin area which is causing me problem[s] with my sleeping in the night time, and I also need something for [the] sharp pain in my toes, and I also need the boil on my butt look[ed] at because it has not drained and is still big.

13

(Doc. no. 15, Ex. 1). On the same day he submitted his February 8th medical request, he was

given hydrocortisone cream. (Id.). Plaintiff then filed an inmate medical request form on

February 25, 2007 stating:

> This is my third request asking for something for my pain in my legs, feet and
> the rash in my groin area, so I'm hoping that I can please see a skin doctor for
> this rash and I'm also hoping that I'm not being charged for the other request
> I've sent in. Can I please get some cream, and pain medicine.

(Id. at Ex. 2). On the next day, Plaintiff was given hydrocortisone cream for his rash, and

Defendant Vaughn also inspected his boil. (Id.). On March 19, 2007, Plaintiff was taken to

the LCHD to be seen by Dr. Kanter, an infectious diseases doctor. (Id. at Ex. 10). Dr.

Kanter, exercising his medical judgment, examined Plaintiff and wrote Plaintiff a

prescription for three medications for Plaintiff's AIDS. (Doc. no. 61, Pl.'s Dep. 30:24 -

31:1). This was the first time any doctor had identified a need for Plaintiff to be prescribed

medication for AIDS. (Id. at 11:11-16).

Even assuming that Defendant Vaughn's course of treatment was somehow deficient

or differed from the treatment plan other caregivers would have pursued, or that Plaintiff

would have preferred, these assertions alone are insufficient to generate a dispute of material

fact regarding whether Defendant Vaughn or any other Defendant was deliberately

indifferent to Plaintiff's serious medical needs. As previously noted, differences in opinion

concerning treatment fall well short of establishing deliberate indifference. See Harris, 941

F.2d at 1505; Waldrop, 871 F.2d at 1033. In fact, allegations of negligence or malpractice

do not amount to deliberate indifference. Campbell, 169 F.3d at 1363-72 (explaining that

medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d

14

at 1505. Moreover, Plaintiff has provided no evidence that the treatment he received was deficient in any way. Plaintiff at his deposition, testified that he believed that Dr. Kanter had saved his life, and Plaintiff was satisfied with the medical treatment he had received from Dr. Kanter. (Id. at 65:7 - 18). Plaintiff also testified that despite the AIDS medications and the treatment provided by Dr. Kanter, Plaintiff still has to contend with the "spots," boils, and the pain in his toes on a regular basis.[7] (Id. at 56:10 - 59:10). Here, the record established that Defendant Vaughn treated Plaintiff's skin conditions with hydrocortisone cream. The only purported treatment for Plaintiff's boils is pain management; however, because Plaintiff cannot take pain medications, Defendant Vaughn appropriately addressed the boils. Finally regarding Plaintiff's pain in his toes, he admitted that he suffered from this symptom prior to his January 10th incarceration, and despite apparently proper medication prescribed by Doctor Kanter, he continues to suffer from this pain. As such, Plaintiff has not raised a material question of fact that Defendants failed to provided him with appropriate treatment.

Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact related to Plaintiff's deliberate indifference claim based on the alleged failure to properly treat his AIDS.

3.    **Alleged Delayed Treatment**

Plaintiff further argues that Defendants were deliberately indifferent to his serious

---

[7]For example, Plaintiff complained about the pain in his toes cause by the neuropathy. However, the Court notes that Plaintiff had this issue prior to being incarcerated at the Jail. (Pl.'s Dep. at 56:10 - 59:10). In addition, Plaintiff notes that, even after being examined by Dr. Kanter, who Plaintiff attributes with saving his life and with whom he "has no problem," Plaintiff still suffers from the pain. (Id.).

medical needs because they delayed in taking Plaintiff to see a doctor. (Doc. no. 15).

Plaintiff complains that, during the weeks following his incarceration, he filled out medical

request forms and submitted several grievances to Defendants concerning his medical needs.

(Doc. no. 15, pp. 5-9). Additionally, Plaintiff asserts that it was not until he personally wrote

the LCHD that an appointment was made for him to see an AIDS specialist. (Id.). Plaintiff

concludes that this delayed treatment subjected him to unnecessary pain and suffering.[8]

Conversely, Defendants maintain that Plaintiff does not allege sufficient facts to conclude

that Defendants ignored his needs or refused medical treatment sufficiently to constitute a

Constitutional violation. (See generally doc. no. 61).

As noted previously, "[a]n inmate who complains that [a] delay in medical treatment

rose to a constitutional violation must place verifying medical evidence in the record to

establish the detrimental effect of [the] delay in medical treatment to succeed." Hill v.

DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated on other*

*grounds by* Hope v. Pelzer, 536 U.S. 730 (2002). "Whether [a] delay in treatment was

tolerable depends on the nature of the medical need and the reason for the delay." Farrow v.

West, 320 F.3d 1235, 1247 (11th Cir.2003) (internal quotation omitted).

Despite Plaintiff's contentions, the record demonstrates that, in the weeks following

his incarceration, Plaintiff received near-constant medical attention for his complaints from

---

[8]During Plaintiff's deposition when asked whether his AIDS medication made the "spots" or rash go away Plaintiff replied, "No, because it was too late. They were already there because I hadn't gotten the medication prior to that date. If I had gotten the medication, they wouldn't have come up there." (Doc. no. 61, Pl.'s Dep. 31:8-13). However, as addressed *infra*, Plaintiff has not provided any verifying medical evidence in the record to establish that there was a detrimental effect of the delay in medical treatment.

several healthcare professionals. As previously noted, Plaintiff was treated either on the same day, or the day after he submitted an inmate medical request form. (Doc. no. 15, Exs. 1, 2, 10; Pl.'s Dep. 29:21 - 30:14).

However, even assuming there was a delay in getting Plaintiff to an infectious disease specialist, his claim must fail. The record does not reflect verifying medical evidence to establish a detrimental effect from [the] delay in medical treatment. Moreover, Plaintiff's own testimony reveals that there was no such detrimental effect. As previously noted, the "spots," rash, boil, and pain in his toes are conditions he continues to deal with on a regular basis that are apparently not remedied by the AIDS medication he was prescribed by Dr. Kanter. For example, concerning the "spots," Plaintiff testified that he "still deal[s] with [the spots] every day." (Pl.'s Dep. 31:19-20). Regarding the boil, Plaintiff notes that he continues to get the boils, and that there is no treatment available for the boils. (Id. at 58:8 - 59:9). Plaintiff states that the treatment for such symptoms is pain management; however, he cannot take pain medication because of kidney problems. (Id.). Thus, clearly any delay in medical treatment could not have affected the boil condition. Concerning the pain in his toes, he testified that he had that symptom of neuropathy before he entered the Jail, and continues to experience that symptom. As such, even if there were a delay in medical treatment, here, Plaintiff was experiencing the neuropathy prior to his incarceration, and continues to experience the pain even though he is taking AIDS medication. Therefore a delay in treatment could not have caused or exacerbated the condition.

In sum, Plaintiff has merely described his dissatisfaction with the medical treatment that he received while incarcerated at the Jail. Even assuming for the sake of argument that

17

the treatment Plaintiff received while incarcerated at the Jail was somehow deficient, that assertion alone is insufficient to generate a dispute of material fact regarding the alleged deliberate indifference to his medical needs. Notably, Plaintiff has not shown that his 1-2 month "delay" in treatment by an infectious disease specialist had a detrimental effect on Plaintiff. He has not provided any evidence to indicate that Defendant Vaughn's treatment was insufficient. Thus, Plaintiff has not provided the Court with medical evidence to support his conclusions that Defendants were deliberately indifferent to his serious medical needs or that he suffered any detrimental effects as a result of the medical treatment he received while incarcerated at the Jail. Rather, the record demonstrates that, while incarcerated at the Jail, Plaintiff received appropriate treatment.

## 3.    Screening of Inmates

Plaintiff also alleges a claim of deliberate indifference to his medical need because the Jail purportedly did not screen its inmates for HIV, tuberculosis, or any other communicable diseases. (Doc. no. 50, p. 1). Plaintiff testified that when he was transferred to state prison, one of the inmates who transferred from the Jail to the prison with Plaintiff tested positive for tuberculosis upon arrival at the prison.[9] (Pl.'s Dep. 16:21 - 17:23). Plaintiff contends that because he could have contracted a communicable disease, Defendants were deliberately indifferent to his health. However, Plaintiff maintains that he never contracted tuberculosis. (Id. at 18:8-9). Similarly, there is nothing in the record, nor does Plaintiff contend, that he contracted any communicable disease.

---

[9]Plaintiff alleges that while at the Jail, the prisoner who tested positive for tuberculosis worked in the kitchen. (Pl.'s Dep. 16:21-17:23).

The Eighth Amendment itself does not entitle inmates to a cause of action for monetary damages absent some showing of actual harm. See, e.g., Henderson v. Sheahan, 196 F.3d 839, 848 (7th Cir. 1999)("[T]o obtain an award of compensatory monetary damages under § 1983, a plaintiff must demonstrate both that he has suffered an 'actual' present injury and that there is a causal connection between that injury and the deprivation of a constitutionally protected right caused by a defendant."); Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999)(holding that prisoner has no Eighth Amendment "failure to protect" claim where he does not allege any physical injury); Wilson v. Yaklich, 148 F.3d 596, 601 (6th Cir. 1998) ("[T]he plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence."); Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996) (holding that Eighth Amendment does not entitle prisoners to monetary compensation for "failure to prevent exposure to risk of harm"); but see Benefield v. McDowall, 241 F.3d 1267, 1272 (10th Cir. 2001) (holding that Eighth Amendment claim will lie even in absence of physical injury). As such, Plaintiff's claim based on the Jail's purported failure to screen its inmates must fail.[10]

---

[10]To the extent Plaintiff seeks injunctive relief requiring Defendants to test inmates at the Laurens County Jail for tuberculosis and other communicable diseases, to allow inmates at the Laurens County Jail to see HIV specialists, and to prevent, the Court presumes, inmates with these communicable diseases from working in the kitchen and serving food.

A party moving for injunctive relief must show the following: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to him outweighs the threatened harm an injunction may cause the opponent; and (4) granting the preliminary injunction will not disserve the public interest. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp.,

Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact related to Plaintiff's deliberate indifference claims. Accordingly, the motion for summary judgment by Defendants should be granted, while Plaintiff's motion should be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment (doc. no. 61) be **GRANTED**, that Plaintiff's motion for summary judgment (doc. no. 49) be **DENIED**, that judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 30th day of July, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537.

In the case at bar, Plaintiff has not met his burden of persuasion on all four requisites for obtaining injunctive relief. Specifically, Plaintiff has failed to show that he will suffer irreparable injury if the injunction is not granted. Plaintiff is incarcerated at Calhoun State Prison and is no longer detained at the Laurens County Jail. (Doc. no. 80). Any claims for which Plaintiff is seeking injunctive relief against the Laurens County Jail employees are moot because Plaintiff has been transferred out of the facility where the alleged unconstitutional conduct occurred. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988). Moreover, as Plaintiff has been transferred from the Laurens County Jail, the purported lack of testing for communicable diseases has no effect on him whatsoever, and thus, he cannot establish irreparable injury. Accordingly, Plaintiff has failed to meet his burden of persuasion on all four requisites for injunctive relief.

20